DOROTHY RUDDY AND ANOTHER v. ROBERT INGEBRET AND OTHERS.[1]

June 26, 1925.

No. 24,707.

**When passenger on street car ceases to be passenger.**

1. Ordinarily a passenger on a street car ceases to be such when he steps from the car onto the street.

**Street railway company need not warn passengers against obvious dangers in the street.**

2. A street railway company owes no duty, under ordinary circumstances, to warn or protect its passengers from obvious street dangers arising from the operation of vehicles thereon.

1. See Carriers, 10 C. J. p. 627, § 1049.
2. See Carriers, 10 C. J. p. 925, § 1349.
3. See Municipal Corporations, 28 Cyc. p. 907.

Headnotes 1, 2. See notes in 1 A. L. R. 953; 12 A. L. R. 1371; 31 A. L. R. 572; 4 R. C. L. 1047; 1 R. C. L. Supp. pp. 1261, 1262; 5 R. C. L. Supp. pp. 265, 266.

[1]Reported in 204 N. W. 630.

Two actions in the district court for Hennepin county. The cases were tried together before Kolliner, J., who directed a verdict in each action in favor of defendants. Plaintiffs appealed from an order denying their motion for a new trial. Affirmed.

*Dahl & McDonald,* for appellants.

*Ralph T. Boardman* and *John F. Dulebohn,* for respondents.

WILSON, C. J.

Plaintiffs are husband and wife. Each in his own right sued defendants to recover damages arising out of injuries suffered by the wife as she undertook in the usual way to alight from a street car of defendant Minneapolis Street Railway Company. When the car stopped she stood on the front steps. The doors were opened for her and as she was in the act of stepping to the street pavement a truck, being driven rapidly and in violation of the law, caught her between its left fender and the hood and carried her about 15 feet. The truck, which was owned by the other defendant, was driven on the occasion in question by its employe, but without authority and for his own personal purpose. At the close of plaintiffs' case a verdict was directed in favor of each defendant. Plaintiffs now appeal from an order denying their motion for a new trial. They now say the order is wrong only as to the street railway.

Under ordinary conditions and in the absence of defective equipment and manipulation of its own instrumentalities an adult passenger on a street car ceases to be such when at the end of his trip he steps from the car onto the street. Keator v. Scranton Tract. Co. 191 Pa. St. 102, 43 Atl. 86, 44 L. R. A. 546; Reining v. Northern Ohio Tract. & L. Co. 107 Oh. St. 528, 140 N. E. 84; 4 R. C. L. 1047; Powers v. Conn. Co. 82 Conn. 665, 74 Atl. 931, 26 L. R. A. (N. S.) 405; Quinn v. N. Y. Life Ins. Co. 224 Mich. 641, 195 N. W. 427; Ind. St. Ry. Co. v. Tenner, 32 Ind. App. 311, 67 N. E. 1044; Loggins v. So. Pub. U. Co. 181 N. C. 221, 106 S. E. 822. But in this case the evidence would justify a finding that the passenger was struck before her feet were on the street and consequently we will discuss

this case on the theory that she was a passenger at the time of the injury and entitled to care accordingly.

The statute requires the driver of the truck to stop not less than "ten feet behind said street car." G. S. 1923, § 2705. The legislature did not make the statute for rear gates only. It applies equally to the front exit doors. It was intended to avoid the peril incident to vehicles being near the exits. The vehicle must be stopped "behind said street car," not behind the exit, hence the vehicle must avoid being alongside the street car when it stops to allow passengers to alight. The violation of this statute is a misdemeanor. G. S. 1923, § 2718.

The street car is equipped with a mirror by which the motorman can see the rear gates in order that he may know that he may safely close the same. It is the claim of plaintiffs that defendant is charged with the duty of protecting the alighting passenger from danger from vehicles and that by use of the mirror the motorman should look for automobiles along the side of the car and operate the street car so that a passenger stepping onto the street will not be subjected to this danger. But this is an obvious danger incident to all streets. It is a peril known to all passengers. The danger may come without warning, and, as in this case, it usually results from a violation of the statutory prohibition. In fact, the risk from such danger is more apparent to the passenger than to the motorman because the passenger can, and should, remain on the street car until he knows that it is safe for him to step onto the street. Being able to so effectually care for himself, the law should not charge someone else, who obviously cannot do so as well, with the duty of protecting him from such obvious and common dangers. It would, under the circumstances, be impracticable to require the company to take the responsibility of protection against these obvious dangers of the street. The motorman has no way of knowing when a driver will instantaneously become a wrongdoer. He at best could have but little judgment as to these dangers when he is attending his usual duties.

The imposition of this additional and exacting duty would necessarily delay traffic with little hope of successful avoidance. The company is not the creator of these conditions or street dangers and they are beyond its control. To say that its duty requires it to protect the passenger from them is, in effect, to make it an absolute insurer of safety to the passenger. The very nature of these obvious dangers, which are necessarily within the knowledge of all, and which do not include defective equipment or manipulation of the company's instrumentalities, makes it impracticable for the company to cope with them, while, on the other hand, they may be successfully avoided by ordinary diligence on the part of the passenger in stepping from the street car into the street. The law gives him all reasonable time, under the circumstances, to safely act and his right in this respect will be zealously guarded. He is not required to advance into the zone of danger. He is given a full view of the street in all directions and he may control his movements by the necessities of the occasion. He should determine when his path is safe. Having this privilege, he cannot charge actionable negligence to the company for failure to discharge a duty which is his. For him the duty is simple and easy. For the company the responsibility would be so burdensome and impracticable that it would be unreasonable, hence cannot be held to be its duty. Such risks belong to the passenger and the company cannot be charged with the duty of protecting him or of giving him warning of such existing dangers.

The law does not impose upon a street railway company a duty incompatible with the ordinary operation of its business. A rule that is not reasonably susceptible of practicable obedience will produce injustice. In this case there was no violation of duty by the company. Ellis v. Hamilton St. Ry. Co. 48 Ont. Law 380; Jacobson v. Omaha & C. B. St. Ry. Co. 109 Neb. 356, 191 N. W. 327, 31 A. L. R. 563; Oddy v. West End St. Ry. Co. 178 Mass. 341, 59 N. E. 1026, 86 Am. St. 482; Chesley v. Waterloo, C. F. & N. R. Co. 188 Iowa, 1004, 176 N. W. 961, 12 A. L. R. 1366; Reining v. Northern Ohio Tract. & L. Co. supra; Powers v. Conn. Co. supra.

The rule as announced by us is flexible and subject to exceptions as noted in the Jacobson case on page 368 [191 N. W. 332, subd. (3)]. There are authorities which tend to support plaintiffs' contentions. Wood v. N. C. Pub. Serv. Corp. 174 N. C. 697, 94 S. E. 459, 1 A. L. R. 942. Our conclusion is in harmony with the weight of authority.

Affirmed.

HOLT, J. (dissenting.)

I dissent. As to passengers leaving by the rear exit, there can be no question but that they are in better position than the motorman to see whether it is safe, on account of approaching vehicles, to step off. But this is not so as to those who alight from the front exit as in the instant case. A person of medium or low stature standing in readiness on the second step as he ought to do in order to alight quickly when the doors open, cannot see vehicles approaching or passing the rear gates, especially if passengers are seated both on the cross and side seats, while the motorman, by means of the mirror to his right, can do so readily. And it seems to me to have been a jury question whether, in the exercise of due care, this motorman became aware of the threatened danger to plaintiff in time to have prevented her injury either by not opening the doors or closing them if opened.